J-S67003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN ADONIS RAWLS | : | |
| | : | |
| Appellant | : | No. 720 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000089-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 10, 2020**

Appellant, Jordan Adonis Rawls, appeals from the judgment of sentence entered on April 5, 2019, following his jury and bench trial convictions. We affirm.

The facts and procedural history of this case are as follows. On October 31, 2016, two victims, Kristine Kibler and Shane Wright, were shot and killed in their residence on Poplar Street in Williamsport, Pennsylvania. On November 10, 2016, law enforcement authorities filed a criminal complaint against Appellant, charging him with two counts of criminal homicide and other, related crimes arising from the aforementioned incident. The next day, Appellant voluntarily reported to the Williamsport Police Department after learning of media reports linking him to the Poplar Street homicides. N.T.

_____

[*] Former Justice specially assigned to the Superior Court.

Pre-Trial Hearing, 4/26/18, at 14.  At the time Appellant reported to the Williamsport Police Department, he was unaware that he was criminally charged.  *Id***.**  The Williamsport police arrested Appellant upon arrival.  *Id***.** at 13-14.  The police then took Appellant to an interview room, read him his *Miranda*[1] rights, and asked that he sign a waiver form, which he did.  *Id***.** at 15.  After five and one-half hours of questioning, Appellant gave a statement to police admitting his involvement with the incident at Poplar Street.  *Id***.** at 36.

Thereafter, on April 2, 2018, Appellant filed an omnibus pre-trial motion, which included a motion to suppress his November 11, 2016 statement to police.  Appellant's Omnibus Pre-Trial Motion, 4/2/18, at 1-31.  In his motion, Appellant asserted that his statement was obtained in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  *Id***.**  The trial court, however, denied Appellant's motion to suppress on August 13, 2018.  Trial Court Order and Opinion, 8/13/18, at 1-13.

The Commonwealth subsequently filed a motion for discovery requesting Appellant to disclose any experts he intended to use at trial. Commonwealth's Motion for Discovery, 11/21/18, at 1-3.  The trial court granted the Commonwealth's motion on December 6, 2018.  Trial Court Order, 12/6/18, at 1.  On February 7, 2019, the Commonwealth filed a motion to preclude Appellant's expert, Dr. Richard Ofshe, from testifying.

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 2 -

Commonwealth Motion, 2/7/19, at 1. The Commonwealth alleged that Dr. Ofshe would proffer opinions on the "phenomenon of false confessions" and "police interrogation techniques" which "[are] not admissible in Pennsylvania" as they "constitute[] an invasion of the jury's role as the exclusive arbiter of credibility." **Id.** On February 27, 2019, Appellant filed a motion *in limine* also seeking, *inter alia*, to preclude the Commonwealth's expert, Sergeant Elwood Spencer, from testifying at trial. Appellant's Motion *in Limine*, 2/27/19, at 3-4. Appellant contended that Sergeant Spencer's testimony regarding firearms and toolmark examination did not "possess the general acceptance to warrant admission" or the "reliability required under the structure of [Pa.R.E.] 403." **Id.** On March 29, 2019, the trial court granted the Commonwealth's motion, but denied Appellant's motion *in limine*. Trial Court Order, 3/29/19, at 1.

Appellant's trial commenced on April 1, 2019. On April 5, 2019, the jury convicted Appellant of first-degree murder,[2] second-degree murder,[3] robbery,[4] criminal conspiracy to commit robbery,[5] criminal attempt to commit

---

[2] 18 Pa.C.S.A. § 2502(a).

[3] 18 Pa.C.S.A. § 2502(b).

[4] 18 Pa.C.S.A. § 3701(a)(1)(iii).

[5] 18 Pa.C.S.A. §§ 903 and 3701(a)(1)(iii).

robbery,[6] and possession of an instrument of a crime.[7] Appellant then waived his right to a jury trial for the remaining charges. Following a brief, ensuing bench trial, the court convicted Appellant of persons not to possess firearms[8] and firearms not to be carried without a license.[9] On that same day, the trial court sentenced Appellant to consecutive life sentences for his first and second-degree murder convictions. Trial Court Opinion, 7/5/19, at 1. Appellant did not file a post-sentence motion. This timely appeal followed.[10]

Appellant raises the following issues on appeal:

I. Whether the trial court committed reversible error by denying [Appellant's] pre-trial motion to suppress [] where [certain challenged] statements were unlawfully obtained [in violation of Appellant's Fifth, Sixth, and Fourteenth Amendment rights?]

II. Whether the trial court committed reversible error by granting the Commonwealth's motion to preclude the expert testimony of Dr. [Richard] Ofshe[?]

III. Whether the trial court committed reversible error by denying [Appellant's] motion *in limine* to preclude the

_____

[6] 18 Pa.C.S.A. §§ 901(a) and 3701(a)(1)(iii).

[7] 18 Pa.C.S.A. § 907(a).

[8] 18 Pa.C.S.A. § 6105(c)(2).

[9] 18 Pa.C.S.A. § 6106(a)(1).

[10] Appellant filed a notice of appeal on April 29, 2019. On May 8, 2019 the trial court filed an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). After securing an extension from the trial court, Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 5, 2019.

Commonwealth from introducing [the testimony of Sergeant Elwood Spencer] where such evidence lacked [the] general acceptance necessary to warrant admission [and, as such, its probative value was outweighed by the danger of unfair prejudice under Pennsylvania] Rule of Evidence 403?

IV. Whether the trial court committed reversible error by failing to hold a **Frye**[11] hearing regarding the admissibility of [Sergeant Elwood Spencer's testimony?]

V. Whether the trial court abused its discretion by failing to give a "consciousness of innocence" instruction[?]

Appellant's Brief at 4 (superfluous capitalization omitted) (footnote added).

We have reviewed the briefs of the parties, the relevant case law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Nancy L. Butts. We conclude that Appellant is not entitled to relief in this case and that Judge Butts's July 5, 2019 opinion, which also incorporates her August 8, 2018 opinion, adequately and accurately disposes of Appellant's issues on appeal. Specifically, we agree that the trial court did not err in admitting Appellant's November 11, 2016, statement to police because Appellant executed a valid waiver of his **Miranda** rights and in turn, waived his Sixth Amendment right to counsel.[12] **See** Trial Court Opinion,

---

[11] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

[12] While we adopt Judge Butts's opinions, we note the following. Herein, Appellant alleges that the trial court erred by denying his motion to suppress because the police obtained his statement in violation of his Sixth Amendment right to counsel. Appellant's Brief at 18-25. A defendant's Sixth Amendment right to counsel attaches at "the initiation of adversary proceedings" which includes the filing of a criminal complaint. **Commonwealth v. McCoy**, 975 A.2d 586, 590 (Pa. 2009). A defendant, however, may waive his Sixth

- 5 -

_____

Amendment right to counsel. Indeed, if "a defendant [] is admonished with the warnings set forth in **Miranda**" he "has been sufficiently apprised of the nature of [his] Sixth Amendment rights, and thus, a waiver of [his] **Miranda** rights may [also] constitute a waiver" of his Sixth Amendment right to counsel. **Montejo v. Louisiana**, 556 U.S. 778, 786 (2009). Nonetheless, a defendant must execute a voluntary, knowing, and intelligent waiver. **Id.** "The determination [of] whether [a defendant] has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case." **Commonwealth v. Kunkle**, 79 A.3d 1173, 1182 (Pa. Super. 2013), *citing* **Fare v. Michael C.**, 442 U.S. 707, 724-725 (1979). "These circumstances include the background, experience, and conduct of the accused." **Kunkle**, 79 A.3d at 1182. Herein, Appellant's chief complaint is that, because the police failed to specifically inform him that he was criminally charged with the Poplar Street homicides, his **Miranda** waiver was invalid, *i.e.*, it was made unknowingly and unintelligently. We disagree. At the suppression hearing, the Commonwealth demonstrated that, at the time Appellant entered the Williamsport Police Department, he knew that law enforcement was "looking for him" because "his picture [was] in the media in an attempt to identify him in relationship to the homicide on Poplar Street." N.T. Pre-Trial Hearing, 4/26/18, at 14. The Williamsport police then advised Appellant that there was an arrest warrant for him, took him into custody, and read him his **Miranda** rights. **Id.** at 13. Before Appellant waived his **Miranda** rights and before police commenced any questioning, police also specifically informed Appellant that the arrest warrant was issued in conjunction with a police investigation of a criminal homicide. **Id.** at 33. Accordingly, we agree with the trial court's determination that the mere fact that the police did not inform Appellant that he was criminally charged did not render his subsequent **Miranda** waiver unknowing or unintelligent. **See Riddick v. Edmiston**, 894 F.2d 586, 591 (3d. Cir. 1990) (holding that the defendant executed a valid waiver of his **Miranda** rights, and in turn, his Sixth Amendment right to counsel, even though law enforcement failed to specifically advise the defendant that he had been indicted on a murder charge); **See Commonwealth v. Carr**, 580 A.2d 1362, 1365-1366 (Pa. Super. 1990) (explaining that a suspect "need not have knowledge of the 'technicalities' of the criminal offense involved" to execute a valid waiver of his **Miranda** rights, "rather, it is necessary only that he be aware of the 'transaction' involved."). Thus, while Appellant's Sixth Amendment right to counsel attached upon the filing of the criminal complaint, the trial court correctly found a valid waiver of that right after Appellant received **Miranda** warnings and executed a waiver form.

8/8/18, at 2-7. We further agree that the trial court properly precluded Dr. Ofshe's proffered expert testimony because it violated the province of the jury, that the trial court did not err by admitting Sergeant Spencer's expert testimony on firearm and toolmark examination without a **Frye** hearing, and correctly concluded that the circumstances of this case did not warrant a consciousness of innocence instruction. **See** Trial Court Opinion, 7/5/19, at 1-4. Therefore, we affirm on the basis of Judge Butts's opinions and adopt them as our own. In any future court filings that address this ruling, the filing party shall attach copies of Judge Butts's opinions filed on August 8, 2018 and July 5, 2019.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/10/2020

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | CR-89-2017 |
| | : | |
| JORDAN RAWLS, | : | |
| Defendant | : | Omnibus Pretrial Motion |

## OPINION AND ORDER

Defendant, Jordan Rawls filed an Omnibus Pretrial Motion on April 2, 2018. A hearing on the Motions took place on April 26, 2018. Several of the issues were disposed of by the Court during the hearing. A briefing schedule was set to address a number of the remaining issues raised. The Court ordered a transcript of the hearing be provided to the Commonwealth and Defendant to assist with the preparation of briefs. The final briefs were due on July 6, 2018.

*Factual Background*

Jordan Rawls is charged with Criminal Homicide (two open counts);[1] Criminal Conspiracy (criminal homicide),[2] Robbery;[3] Criminal Conspiracy (robbery);[4] Criminal Attempt (robbery);[5] Persons not to Possess Firearms;[6] Firearms not to be Carried without a License;[7] and Possessing Instruments of a Crime.[8] The charges arise from a shooting that occurred on October 31, 2016, at 613 Poplar Street in Williamsport, PA.

---

[1] 18 Pa.C.S. § 2501(a).
[2] 18 Pa.C.S. § 903(a)(1).
[3] 18 Pa.C.S. § 3701(a)(1)(iii).
[4] 18 Pa.C.S. § 903(a)(1).
[5] 18 Pa.C.S. § 901(a).
[6] 18 Pa.C.S. § 6105(a)(1).
[7] 18 Pa.C.S. § 6106.
[8] 18 Pa.C.S. § 907(b).

RECEIVED

AUG 13 2018

DISTRICT ATTORNEY

1

## Exhibit A

*Discussion*

*Did Defendant voluntarily waive his* Miranda *rights*

Defendant first alleges that the statements that he gave at the police station should be suppressed as they were obtained by the police in violation of his Fifth, Sixth and Fourteenth Amendment rights. The Commonwealth argues that there was "nothing sinister employed by the [A]gents" from the Williamsport Bureau of Police prior to the Defendant waiving his Fifth Amendment right. This Court agrees with the Commonwealth.

In order for a waiver of *Miranda* rights to be valid, the waiver must have been knowing and voluntary. *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The Court in *Miranda* emphasized that its decision was "not intended to hamper the traditional function of police officers investigating a crime." *Miranda v. Arizona*, 384 U.S. 436, 476 (1966). Rather, the safeguards of the Miranda warnings were put into place to advise an accused of his rights. *Berghuis*, 560 U.S. at 385; *Davis v. United States*, 512 U.S. 452, 460 (1994); *Moran v. Burbine*, 475 U.S. 412, 427 (1986). Therefore, an individual who is taken into custody must be informed of, and have the opportunity to exercise, his *Miranda* rights, but may knowingly and intelligently choose to wave these rights and make any statements he desires. *Id.* In order for an accused to voluntarily waive his right to remain silent, the accused must not have been threatened, tricked, or cajoled by police officers into the waiver. *Miranda*, 384 U.S. at 476. Further, officers may not mislead a suspect or induce a waiver with the promise of a lower charge or special consideration. *Commonwealth v. Gibbs*, 553 A.2d 409, 411 (Pa. 1989). An officer also may not persuade an individual who has invoked his *Miranda* rights to

2

retract his position. *Commonwealth v. Weaver*, 418 A.2d 565, 568 (Pa. Super. 1980). In order to invoke the right to remain silent, an accused must make an unambiguous, affirmative statement. *Berghuis*, 560 U.S. at 380. A suspect must also unambiguously request counsel; if he does not, the police have no obligation to cease questioning. *Davis*, 512 U.S. at 459. Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). After informing an accused of his *Miranda* rights, officers are permitted to engage in a pre-waiver interrogation and any subsequent confession acts as an implied waiver of *Miranda* rights. *Berghuis*, 560 U.S. at 372.

In this case, Defendant appeared at the Williamsport Bureau of Police headquarters after hearing his photograph was being circulated in the media, alerting the public that he was wanted for questioning in connection with a double homicide which occurred on Poplar Street. Defendant was arrested by Agent Trent Peacock of the Williamsport Bureau of Police and read the *Miranda* warnings verbatim. Defendant was encouraged to talk to the agents but then reminded again that he did not have to talk to them or answer any questions, and that by waiving his *Miranda* rights, Defendant was agreeing to answer questions without an attorney present. Defendant signed a waiver minutes later and was subsequently interviewed. There is nothing to indicate from the video or the conversation that Defendant was incapable of understanding the rights explained to him. No evidence was presented that the agents coerced Defendant, promised Defendant a lesser or harsher sentence based on a waiver, or threatened or harmed Defendant. The agent's statements prior to obtaining Defendant's waiver did not rise to a level of coercion that would be condemned by *Miranda*, rather they were nothing more than an attempt to lull

3

Defendant into a congenial attitude. Further, as the agents would have been permitted to engage in pre-waiver interrogation, it can be extrapolated that they are also within their right to make un-coercive statements prior to obtaining a waiver. *Miranda* was not intended to hamper normal police functions, into which category the officer's statements undoubtedly fall, as common police tactics. Defendant asserted that he understood his rights on multiple occasions and expressed that he had no issue talking to the agents. At no point did the Defendant state he would like to invoke his right to remain silent or speak to an attorney. Defendant's argument that respectful police conduct is inherent to cajoling and trickery, and thus respectful conduct must cause a statement to be involuntary, is unfounded and over-reaching.

Further, the Supreme Court of the United States has held that an accused does not have to know all possible subjects of questioning in advance of interrogation in order to voluntarily, knowingly, and intelligently waive his Fifth Amendment privilege. *Colorado v. Spring*, 479 U.S. 564, 577 (1987). Further, a valid waiver "does not require that an individual be informed of all information 'useful' in making his decision or all information that 'might ... affec[t] his decision to confess.'" *Id.* at 576 (quoting *Moran*, 475 U.S. at 422). *Miranda* warnings are intended to convey the constitutional privileges afforded to an individual and the consequences of abandoning them. *Id.* at 577. Therefore, the failure of police officers to inform a defendant of the subject matter of an interrogation does not affect the defendant's decision to waive his Fifth Amendment privilege in a constitutionally significant manner. *Id.* at 566.

Here, Defendant asserts that because he was not specifically informed of the charges against him prior to his *Miranda* warnings being read, his waiver of his *Miranda* rights was not valid. This Court finds this assertion to be unfounded. Defendant discovered that he was wanted

4

for questioning in relation to the homicides, which had occurred on October 31, 2016, after becoming aware that his picture was being circulated through the media. As a result, Defendant voluntarily reported to the police station on November 11, 2016. Defendant informed the police officers that he was already aware of the shooting deaths as he had previously read about the incident on Facebook. The Court finds that Defendant was adequately aware of the circumstances surrounding his arrest and subsequent questioning at the time he waived his *Miranda* rights. It is not necessary that Defendant know all the possible subjects of the interrogation to validly waive his *Miranda* rights or relinquish his right to remain silent. However, the officers did not stray into a discussion of any other crimes, but consistently kept their questions related to the events of the night in question. Defendant was supplied the *Miranda* warnings and thereby informed of the constitutional privileges afforded to him. Defendant was fully apprised of, and expressly waived, his *Miranda* rights. Therefore, Defendant's waiver of *Miranda* was knowingly and intelligently made.

### Did Defendant waive his Sixth Amendment right to counsel

Defendant also asserts that the failure of police to inform him of the crimes with which he was being charged is a violation of his Sixth Amendment right to counsel. The Commonwealth argues that the Defendant was aware both from the media reports and statements made by Agent Trent Peacock that the police were investigating a homicide and that he was a person of interest in the investigation.

The Supreme Court of the United States has held on multiple occasions that when an accused voluntarily waives his *Miranda* rights, he also waives his Sixth Amendment right to counsel. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *Patterson v. Illinois*, 487 U.S. 285, 293

5

(1988). The court reasoned that an accused who is given *Miranda* warnings has been sufficiently apprised of the nature of his Sixth Amendment rights and the consequences of abandoning such rights, therefore a knowing and intelligent waiver of *Miranda* also applies to the Sixth Amendment right to counsel. *Patterson*, 487 U.S. at 296. Further, the Court has held that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. *Montejo*, 556 U.S. at 786; *Patterson*, 487 U.S. at 292 n. 4; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The Supreme Court of Pennsylvania has also held that a waiver of *Miranda* rights is sufficient to waive an accused's Sixth Amendment right to counsel. *Commonwealth v. Woodard*, 129 A.3d 480, 501 (Pa. 2015) (reasoning that the appellant was informed of his right to counsel and chose to give a statement without counsel present, thus nothing more is required under the law).

Defendant asserts that his waiver of *Miranda* rights was not valid and therefore was insufficient to waive Defendant's Sixth Amendment right to counsel. However, as discussed previously, this Court has found that Defendant's waiver of his *Miranda* rights was valid. Defendant argues that he was unaware of the magnitude of the accusations against him and therefore could not have validly waived his right to counsel. However, Defendant was admittedly aware that the incident which he was wanted for questioning in connection to was the shooting death of two people. Defendant arguably understood the gravity of his arrest due to this knowledge. Further, Defendant was informed of the rights afforded to him and the consequences of abandoning such rights but chose to waive them regardless. Therefore, Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent; thus, it was sufficient to waive Defendant's Sixth Amendment right to counsel.

6

*Were Defendant's statements on November 11, 2016 made voluntarily*

The next issue raised by the Defendant is that his statements made to the police on November 11, 2016 were not made voluntarily. Defendant spoke to the police on this first occasion after discovering that he was a person of interest. Agents Peacock and Kontz then led Defendant to an interrogation room and placed him under arrest. An interview video was prepared of the conversation between the Defendant and the agents. Commonwealth asserts that a review of the video establishes that the statements were voluntarily made.

To determine voluntariness, a court must consider the totality of the circumstances surrounding a given statement. *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002); *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991). Relevant factors include the defendant's age, intellectual capacity, the time of day, and manner of questioning. *See Kentucky v. Cane*, 476 U.S. 683, 691 (1986). Circumstances regarding the manner of questioning include the duration and means of the questioning, the nature of the detention, the defendant's physical and psychological state, the conditions of the interrogations, and the conduct of the police officers. *Payne v. Arkansas*, 356 U.S. 560 (1958); *see Templin*, 795 A.2d at 966; *Commonwealth v. Perez*, 845 A.2d 779 (Pa. 2004). The duration of an interrogation is not determinative on the issue of voluntariness; officers may give an accused the opportunity to detail his side of the story before arraigning him. *Commonwealth v. D'Amato*, 526 A.2d 300, 308 (Pa. 1987). Additionally, the threat of physical violence, or the promise of protection from physical violence, is a relevant factor. *Fulminante*, 499 U.S. at 487-88. In Pennsylvania, a confession is involuntary when an interrogation is so manipulative or coercive that it deprives the defendant of his ability to make a

7

free and unconstrained decision to confess. *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998).

Defendant argues that the statements made to the police officers following Defendant's waiver of *Miranda* rights were involuntary and must be suppressed. The Court disagrees. Defendant is twenty-four years old and has had prior experience with the police. Defendant does not allege that his intellectual capacity is diminished. On November 11, 2016, Defendant arrived at the police station at approximately 1:45 p.m. and was subsequently placed under arrest. Defendant was taken to an interrogation room at approximately 2:03 p.m. and the police officers commenced questioning. Defendant was then questioned on and off until approximately 7:40 p.m. During this time span, Defendant was given over two hours of breaks from interrogation, which included multiple cigarette breaks and a dinner break. The length of Defendant's interrogation cannot be seen as excessive in length. Additionally, the police officers did not threaten, deceive, or promise anything to Defendant at any point in time, but rather encouraged him to be honest and emphasized the seriousness of the situation. Defendant may have been held incommunicado or without the opportunity to speak to others for the duration of the interrogation only in the sense that Defendant's relatives or any others did not request to see him and thus were not denied the opportunity to do so. The actual facts of this case are in direct contrast to cases upon which the Defendant relies. Moreover, each of the cases which Defendant relies upon to assert that the statements were involuntarily made involved defendants who were deprived of food, sleep, and breaks or threatened with physical harm. The short time span in which Defendant was actually interrogated, the accommodations made for his comfort considering the

8

circumstances, and the demeanor of the police officers all suggest that Defendant's statements were completely voluntary.

Defendant also argues that the police officers were in complete control of Defendant's liberties; however, the record shows that the officers granted Defendant's requests to pause or smoke. Counsel for Defendant insinuates that the off-screen breaks in which Defendant requested to smoke a cigarette may have been accompanied by improper police behavior and that the officers' comments "smack of damage control," however, Defendant himself has made no claims of threats, violence, or coercion from the officers at any time. Additionally, any delay in taking Defendant to a Magistrate for arraignment is not determinative of the voluntariness of his confession. Officers allowed Defendant the time to detail his version of the events on the night in question; the interview was in fact prolonged by Defendant's refusal to admit to known facts even when faced with evidence in support of them.

In reviewing the totality of the circumstances, the Court finds that the interrogation was not so manipulative or coercive as to deprive Defendant of his ability to make free and unconstrained statements. Therefore, Defendants statements on November 11, 2016 were made voluntarily.

*Were Defendant's statements on November 16, 2016 made voluntarily*

Defendant was subsequently interviewed on November 16, 2016. Defense Counsel alleges that the questioning was neither preceded by adequate *Miranda* warnings nor proof of an appropriate waiver and should be suppressed.

9

Under Pennsylvania law, not every renewal of the interrogation process requires the repetition of *Miranda* warnings. *Commonwealth v. Proctor*, 585 A.2d 454, 459 (Pa. 1991). The courts must look to the circumstances of each case to determine whether a warning has become stale. The factors to be evaluated are:

> [T]he length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether statements obtained are materially different from other statements that may have been made at the time of the warnings.

*Id.* Additionally, a Fifth Amendment waiver may still be valid, even if not given in the exact form described in *Miranda*, if the defendant is provided with a "fully effective equivalent" to the verbatim warning. *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989).

In this case, there was a five day lapse between the first warnings and the second interrogation; the second interrogation was conducted in the same room as his first interview; the interrogation was conducted by the same two officers as the November 11 questioning; and Defendant did not provide any new information or materially different statements, his statements were consistent with those given at the prior interrogation. Defendant was given an abbreviated version of the *Miranda* warning, including the right to remain silent, the right to an attorney, and the right to stop answering questions at any time. Defendant affirmed his understanding of those rights. Therefore, Defendant's original *Miranda* waiver coupled with the truncated reminder was sufficient to render the subsequent statements as voluntary. Therefore, Defendant's statements on November 16, 2016 were made voluntarily.

10

*Is the Defendant entitled to impeachment evidence and the complete criminal history of the Commonwealth's witnesses*

Under the *Brady* rule, the prosecution has a duty to disclose all exculpatory evidence to a defendant prior to trial. *See Brady v. Maryland*, 373 U.S. 83 (1967); *Commonwealth v. Strong*, 761 A.2d 1167, 1171 (2000). Impeachment evidence also falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667. Impeachment evidence includes "any potential understanding between the prosecution and a witness, because such information is relevant to the witness's credibility." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (2013). Further, a witness's criminal convictions, arrests, and parole or probation status are relevant impeachment evidence. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). A witness's criminal record has long been held as a necessary and valuable tool for defense. *Commonwealth v. Copeland*, 723 A.2d 1049, 1051–52 (Pa. Super. 1998); *see Davis*, 415 U.S. 308; *Commonwealth v. Baxter*, 640 A.2d 1271 (Pa. 1994). A witness's *crimen falsi* convictions, actual agreements with prosecution, and hopes for leniency are all relevant to determine his or her potential bias. *Copeland*, 723 A.2d at 1052.

The Third Circuit has held that a criminal record, which arguably could have been discovered by defense counsel, is suppressed if not disclosed by the prosecution. *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 292 (3d Cir. 2016) (citing *Wilson v. Beard*, 589 F.3d 651, 663–64 (3d Cir. 2009)). Further, the Ninth Circuit has held that the fact that a defendant could and should have discovered *Brady* evidence, did not absolve the prosecution of their duty to disclose the evidence. *Gantt v. Roe*, 389 F.3d 908, 913 (9th Cir. 2003). Favorable evidence to the defendant is material evidence under *Brady*. *Bagley*, 473 U.S. at 678.

11

It is well settled that that a criminal defendant is entitled to know any information that may affect the reliability of the witnesses against him. *Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992) (nondisclosure of evidence affecting reliability falls within *Brady's* general rule). *Copeland*, 723 A.2d at 1051. It is not within the Commonwealth's power to determine what areas of a witness's criminal history may or may not be relevant for *Brady* purposes. Contrary to the Commonwealth's assertion, *crimen falsi* convictions are not the only information to which the Defendant is entitled. Rather, any evidence which is favorable to the defense must be disclosed since there are a variety of reasons why a witness's criminal record is relevant to his or her potential bias, including an agreement with prosecutors on open charges, hopes for leniency in sentencing, and prior dealings with law enforcement as an informant. *See Commonwealth v. Dawson*, 702 A.2d 864 (Pa. Super. 1997) (actual agreements, as well as a witness's hopes for a deal are proper subjects of cross-examination); *see also Commonwealth v. Borders*, 560 A.2d 758 (Pa. 1989) (even pending juvenile charges may be brought out on cross-examination to show bias). Therefore, this Court finds the Third Circuit's reasoning persuasive, choosing to recognize that such criminal histories, even those discoverable by Defendant, may be suppressed by the Court if the Commonwealth fails to disclose the information.

12

## ORDER

AND NOW, this 10th day of August, 2018 after hearing and argument on Defendant's Omnibus Pretrial Motion, the Defendant's Motion to Suppress Statements is hereby DENIED.

Defendant's Omnibus Pretrial Motion to Compel Disclosure of Existence of and Substance of Promises of Immunity, Leniency, or Preferential Treatment and the Complete Criminal History of Commonwealth Witnesses is hereby GRANTED. It is ORDERED AND DIRECTED that the Criminal histories of all Commonwealth witnesses to be called to testify at trial be provided to Defense Counsel no later than thirty (30) days prior to jury selection.

By The Court,

Nancy L. Butts, President Judge

Cc: DA
E.J. Rymsza, Esq.

13

## IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,  :
            :
    v.        :   CR 89-2017
            :
            :
            :
JORDAN RAWLS,      :   CRIMINAL DIVISION
   Appellant      :   APPEAL

### OPINION IN SUPPORT OF ORDER IN COMPLIANCE WITH RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

Appellant appeals his judgment and sentence, which was rendered on April 5, 2019. This Court requested a Concise Statement of Matters Complained of on Appeal on May 8, 2019. Appellant filed for an extension of time to file, which this Court granted. Appellant filed his Statement of Matters Complained of on Appeal on June 28, 2019. In his Statement of Matters Complained of on Appeal Appellant claims that this Court erred: (1) in not suppressing Appellant's statements to police;[1] (2) in granting Commonwealth's Motion to Preclude the testimony of Dr. Richard Ofshe; (3) in denying Appellant's Motion in Limine to preclude the testimony of Elwood Spencer an expert in firearms and toolmark examination; (4) in not conducting a *Frye* hearing for the admissibility of Elwood Spencer's expert testimony; (5) failing to give a consciousness of innocence jury instruction; and (6) by failing to give a jury instruction on various omissions in the police investigation.

*Improper Preclusion of Dr. Richard Ofshe*

Appellant claims this Court erred in precluding the testimony of Dr. Richard Ofshe "whose testimony would have educated the jury on influences during police interrogation, coercive techniques utilized by the police to elicit a confession and overbear an individual's will,

---

[1] This issue was addressed in this Court's Opinion and Order dated August 13, 2018, on which this Court will rely for the purposes of this Opinion.

RECEIVED
JUL 05 2019
DISTRICT ATTORNEY

## Exhibit B

and generally how interrogations work." Appellant's Statement of Matters Complained of on Appeal 6/28/19, at 1. This mirrors Appellant's representation to the Court regarding the matter at the March 5, 2019 hearing. Appellant claims that *Commonwealth v. Alicia* barred expert testimony on false confessions and not on police techniques and theories of coerced confessions. N.T. 3/5/19, at 6-8. This Court disagrees with Appellant and finds that the proffered testimony would have been no different than that which was prohibited in *Alicia*.

The Pennsylvania Supreme Court in *Alicia* determined that, even after barring an expert from giving an final opinion on the issue of whether a confession was false or not, "[g]eneral expert testimony that certain interrogation techniques have the potential to induce false confessions improperly invites the jury to determine that those particular interrogation techniques were used to elicit the confession in question, and hence to conclude that it should not be considered reliable." *Commonwealth v. Alicia*, 92 A.3d 753, 764 (Pa. 2014). The Pennsylvania Supreme Court found the testimony was therefore not permissible because it would be "an impermissible invasion of the jury's role as the exclusive arbiter of credibility." *Id.* As in *Alicia*, whether an individual's confession is coerced "is best left to the jury's common sense and life experience, after proper development of relevant issues related to . . . the particular circumstances surrounding the elicitation of his confession, using the traditional and time-honored techniques of cross-examination and argument." *Id.*

### Failure to Preclude the Testimony of Elwood Spencer

Appellant contends that this Court erred in two ways, by not precluding the testimony of Elwood Spencer and by not holding a *Frye* hearing on the issue. "*Frye* is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving novel science." *Commonwealth v. Dengler*, 890 A.2d 372, 382 (Pa. 2005). At trial, Elwood Spencer testified as an expert in the field of firearms and toolmark examination.

2

Firearms and toolmark examination is a field which Pennsylvania Courts have time and time again found to not be novel. *See Commonwealth v. Whitacre*, 878 A.2d 96, 101 (Pa. Super. 2005) ("As the technique [used in firearms and toolmark examination] has been in use since the 1930's, it is neither new nor original, but rather is of the sort that is offered all the time."); *see also Commonwealth v. Ovalles*, 144 A.3d 957, 963 (Pa. Super. 2016) (expert testimony of firearms and toolmark examiner provided at trial); *Commonwealth v. Frein*, 206 A.3d 1049, 1061 (Pa. 2019) (expert toolmark evidence used as evidence at trial). Since the methods used by Elwood Spencer are not novel and are commonly accepted by Pennsylvania Courts this Court did not preclude his testimony or hold a *Frye* hearing to determine if the methods of examination were novel.

### Court's Failure to Give Pertinent Jury Instructions

Appellant argues this Court should have given the jury a consciousness of innocence instruction because he self-reported to the police station for questioning. One of the few Pennsylvania cases dealing with a consciousness of innocence jury instruction is *Commonwealth v. Thomas*. The Pennsylvania Supreme Court recognized that other jurisdictions which have addressed consciousness of innocence jury instruction "uniformly have concluded that a defendant is not entitled to such an instruction." *Commonwealth v. Thomas*, 54 A.3d 332, 342 (Pa. 2012). Although it did not all together bar a trial court from giving a consciousness of innocence jury instruction, the Pennsylvania Supreme Court stated "[t]he matter is properly one of argument to the jury." *Id.* This Court found, as in *Thomas*, Appellant had ample opportunity to address the issue on cross examination and in argument while closing. Appellant took full advantage of his opportunity to do so. N.T. 4/4/19, at 23, 29, 33-34. Appellant would have this Court instruct a jury on consciousness of innocence every time a defendant came in for

3

questioning of their own accord, which as a singular action is not enough to trigger the necessity for such an instruction.

Lastly Appellant argues this Court erred when it failed to instruct the jury based on "various omissions in the police investigation where the lack of scientific testing and/or otherwise following police procedures during the investigation of the murders was a relevant factor in evaluating the Commonwealth's evidence." Appellant's Statement of Matters Complained of on Appeal 6/28/19, at 2. Appellant presented this Court with the Criminal Model Jury Instructions for Massachusetts 3.740, Omissions in Police Investigations, asking it be read to the jury. *See* N.T. 4/4/19, at 15-16. As Pennsylvania Courts have not recognized such an instruction, this Court did not allow the instruction to read to the jury. The Court noted that the jury is already instructed to find based on the evidence *"or the lack thereof"* and permitted counsel for both sides to argue the issue in closing. *Id.* at 16-17, 78-79. Defense counsel did argue the issue adamantly in his closing. *Id.* at 35-40. To have allowed the instruction would have taken focus away from the jury's primary task to determine whether the Commonwealth had proved the entirety of its case beyond a reasonable doubt. The jury would have instead been directed to focus on what efforts created the evidence as opposed to the evidence itself, which would be in err.


DATE:   July 5, 2019

By the Court,

Nancy L. Butts, President Judge


xc:     DA (MW)
        Edward J. Rymsza, Esq.

NLB/kp

4